IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

EDWIN GURULE as Personal Representative
of the ESTATE OF JERLYN YAZZIE, MARGIE
C. PIASO as Next Friend of N. CANALES-YAZZIE
and J. CANALES-YAZZIE, Minor Children,

      Plaintiff,

  v.                                                                                                    Civ. No. 22-872 JCH/SCY

NISSAN MOTOR CO., LTD and NISSAN
NORTH AMERICA, INC.,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

After the parties advised the Court that they had reached a settlement in this case, the presiding judge entered an order referring the matter to me to conduct a fairness hearing and submit proposed findings and a recommended disposition. I have reviewed the documents filed in this case, to include the sealed report of the guardian ad litem. I have also conducted a fairness hearing. Having done so, I propose the Court find that the settlement reached in this case is fair, that the Court approve the settlement, that the Court enter an order to have the parties file closing documents, and that the Court close this case if such closing documents meet with Court approval.

## BACKGROUND

On September 27, 2021, Decedent Jerlyn Yazzie was driving her children to school in a vehicle the Nissan Defendants manufactured, designed and sold. It appears Ms. Yazzie drifted out of her lane and into the median. Statements from her children indicate that Ms. Yazzie may have fallen asleep. Evidence further indicates that Ms. Yazzie may have lost control of her vehicle

when she attempted to reenter the highway. Upon losing control, her vehicle rolled over several times.

At the time of the accident, Ms. Yazzie's two minor children were in the car with her. Both sustained injuries. Plaintiff's biomechanical expert, however, advised that their injuries were most likely related to the high speed and number of rolls in the rollover, and did not stem from a crashworthiness defect in the vehicle. Doc. 65 at 2.

Ms. Yazzie died in the crash. Her death appears to be due to head injuries associated with her head getting caught between the doorframe and the ground as the vehicle rolled. Plaintiff filed suit against Defendants alleging that defects in the roof structure, driver restraint system and side window glass caused Ms. Yazzie's injuries.

The settlement agreement now at issue provides that, pursuant to the New Mexico Wrongful Death Act, after attorney's fees and expenses are deducted, settlement proceeds will be distributed equally to Ms. Yazzie's minor children. The terms of the negotiated settlement and the proposed structure of the funds are set forth in the sealed GAL report, Doc. 65.

## LEGAL STANDARD

The Court has both the authority and the obligation to review the fairness of a settlement involving a minor child. That authority stems from New Mexico common law, which states that "a next friend or guardian ad litem acting for a minor may negotiate a compromise or settlement, but such compromise or settlement is not binding on the infant in the absence of judicial approval." *Garcia v. Middle Rio Grande Conservancy Dist.*, 1983-NMCA-047, ¶ 28, 99 N.M. 802, 808, overruled on other grounds by *Montoya v. AKAL Sec., Inc.*, 1992-NMSC-056, ¶ 28, 114 N.M. 354. "A trial court in an action involving minor children has a special obligation to see that

they are properly represented, not only by their own representatives, but also by the court itself." *Id.* ¶ 30. "In passing upon settlements dealing with claims or rights of minors, the court must determine whether the approval of a compromise would be in the best interests and welfare of the minor child." *Id.* (citing *United States v. Reilly*, 385 F.2d 225 (10th Cir. 1967)). A court is required to reject a settlement "[w]hen a settlement involving a minor is presented to a court for approval and the information before the court indicates that the settlement is not fair to the minor." *Shelton v. Sloan*, 1999-NMCA-048, ¶ 42, 27 N.M. 92, 100. The factors the Tenth Circuit has indicated that courts should consider in determining whether a settlement involving a minor is fair are:

> (1) whether the proposed settlement was fairly and honestly negotiated;
>
> (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
>
> (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
>
> (4) the judgment of the parties that the settlement is fair and reasonable.

*Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322 (10th Cir. 1984).

## **DISCUSSION**

I held a fairness hearing on May 13, 2024. At the hearing, I discussed the *Jones* factors on the record and provided the parties with the opportunity to respond. I found that each *Jones* factor weighs in favor of settlement approval. All parties agreed with this assessment. In addition, the sister of the deceased and co-guardian of the children, Annamarie Piaso, spoke at the hearing and concurred on the record that the settlement is fair and in the best interests of the minor children.

The value of this case primarily lies in the serious injuries to Ms. Yazzie. Not only were the injuries to the children less severe than the injuries to Ms. Yazzie, Plaintiff's own expert opined that the injuries to the children could not be attributed to a defect in the vehicle. Doc. 65 at 1-2. Thus, neither child has a strong claim against Defendants for the personal injuries they suffered. For purposes of settlement, the children, who are also less than one year apart in age, are similarly situated. Doc. 65 at 10-11. An even distribution of proceeds between them is fair.

Indeed, given that the settlement contemplates payment to Ms. Yazzie's estate, this is the result the New Mexico Wrongful Death Act ("WDA") demands. It is undisputed that Ms. Yazzie's minor children are her only two beneficiaries under the WDA. As such, the WDA mandates that proceeds her estate recovers be divided evenly between them. NMSA § 41-2-3. In a case such as this where the beneficiaries of a settlement are similarly situated, likely have no viable claims for their own injuries, and are evenly splitting settlement proceeds going to the estate, the fairness of an even disbursement to the minor children is readily apparent. Further, given evidence that Ms. Yazzie was at fault for the accident, that the injury to Ms. Yazzie occurred when her vehicle rolled over (an event Plaintiff likely would not successfully attribute to a product defect), and that tying Ms. Yazzie's injuries to a product defect would be difficult, the amount of the settlement in this case (which is set forth in the GAL report) is fair and reasonable. An analysis of the *Jones* factors confirms these findings.

    A.    *Jones* Factors

        1.    <u>Whether the proposed settlement was fairly and honestly negotiated.</u>

The terms of settlement were fairly and honestly negotiated at arm's length and the minor children were represented by counsel during settlement discussions. That the parties reached a

settlement without the assistance of a private mediator or a magistrate judge does not call the fairness of the settlement into question. The overriding question before the Court is whether the settlement reached was in the best interests of the minor beneficiaries. Here, given the difficulty of ultimately prevailing in this case, Plaintiff's counsel negotiated a reasonable settlement. Expenses associated with going through a formal mediation process likely would not have increased the amount of this settlement. As a result, expenses incurred in connection with a formal mediation likely would have increased the minor beneficiaries' costs without increasing the amount their settlement.[1] Thus, I agree with the parties' decision to keep litigation costs down by reaching a settlement informally rather than through a formal settlement process.

Similarly, I agree with the parties' decision to use one GAL rather than to hire a separate GAL for each beneficiary. In a case like this where the governing statute requires an even distribution of settlement proceeds going to the estate, driving up the cost of settlement through the payment of fees to multiple GALs would ultimately come out of the pockets of the beneficiaries. Such expenses are not in the best interests of the minor children.

For these reasons, I propose the Court find counsel fairly and honestly negotiated this settlement amongst themselves.

        2.        <u>Whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt.</u>

Defendants vigorously contest liability. Evidence exists that Ms. Yazzie caused the accident and that her injuries were due to the high speed of the vehicle (75 mph) and the number

---

[1] Even a court-guided settlement conference, which does not involve mediator's fees, drives up the costs of litigation because that process requires significant attorney time preparing for and attending the conference.

of rolls (4-6). Defendants may have been able to show that Ms. Yazzie's own negligence caused her injuries, and may also have been able to show that the children's injuries were due to her negligence rather than a product defect. In any case, products liability cases are expensive to litigate and difficult to prove and win. There was a significant chance the minor children would end up with nothing, absent a settlement. Accordingly, there are serious questions of law and disputes of fact that place the ultimate outcome of this litigation in doubt.

    3. <u>Whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation.</u>

  This factor strongly weighs in favor of reaching a settlement. The value of an immediate and swift recovery vastly outweighs the possibility of greater future relief after protracted and expensive litigation. Products liability cases are expensive in that they require significant expert testimony. By settling this case before incurring significant expert expenses, Plaintiff has significantly increased the share of settlement proceeds that will go into the pockets of the minor children. If Plaintiff were to settle after incurring expert expenses, or to proceed to trial and prevail in an amount no greater than the settlement, the share of proceeds going to the minor children would be reduced.

  And, as discussed above, proving liability would be difficult in this case. Thus, there is a distinct possibility that additional litigation could lead to the children recovering nothing. In addition, the early settlement contributed to Plaintiff's counsel's willingness to reduce attorney's fees from 40% to 33%, which provided a further benefit to the minor children.

    4. <u>The judgment of the parties that the settlement is fair and reasonable.</u>

  All interested parties, after considering the advantages and disadvantages, indicated this is a settlement in which they wish to enter. The GAL interviewed the parties, the minor children,

and reviewed a significant number of documents. His report provides additional assurance that the interests of the minors are being protected by this settlement.

      B.      Attorney's Fees

The relevant attorney's fee agreement entitled counsel to obtain 40% of the total recovery in this case, but counsel has agreed to reduce it to 33%. The GAL analyzed the appropriateness of attorney's fees in his report, and I adopt his analysis for purposes of this PFRD. Doc. 65 at 7-9. Given the result obtained, the work counsel performed to investigate this case and consult with experts, and the fact that counsel had to be prepared to take a complicated case to trial, I find counsel's reduced fee to be reasonable.

      C.      Guardian ad litem

The Court required the appointment of a GAL prior to deciding whether to approve the settlement. Doc. 62. The GAL investigated this case and spoke with Margie Piaso, the grandmother of the minor children and Plaintiff's counsel. The GAL provided a report which was helpful to the Court in evaluating the settlement. In addition, the parties reached an agreement that, up to a certain amount, Defendants would pay the GAL fees. This benefitted the minor children and further demonstrates the reasonableness of the settlement.

      D.      Financial structure

Due to privacy concerns, I do not outline the details of the financial structure in this PFRD. Those details are included in the sealed GAL report. However, I do make several points related to the structure. First, the amount of settlement proceeds does not justify the expenses that would be associated with a trust as opposed to an annuity. Second, the annuities provide for a guaranteed payout and are backed by a financial institution with high credit ratings. Third, rather

than providing that the minors receive all settlement proceeds when they turn eighteen, the annuity provides for a modest lump sum payment when the minors turn eighteen, to be followed by monthly payments and additional lump same payments occurring at ages twenty-one and twenty-five. Such a payment structure considers the likely maturity of the beneficiaries at the time of payment and is in the best interests of the beneficiaries.

**THEREFORE**, I recommend the Court order as follows:

1. The Joint Motion to Approve Settlement, Doc. 61, is GRANTED.

2. All immunities and privileges available to the Guardian ad Litem, as articulated by the Tenth Circuit in *Dahl v. Charles F. Dahl, M.D., P.C. Defined Ben. Pension Tr.*, 744 F.3d 623, 630 (10th Cir. 2014), shall be extended to the Guardian ad Litem in this matter, and such Guardian ad Litem, Ernie Leger, shall be absolutely immune from any liability for his actions taken pursuant to this appointment, as his participation in this case was in furtherance of the judicial process, *Fuller v. Davis*, 594 F. App'x 935, 939 (10th Cir. 2014). He is hereby released from his duties.

3. The parties shall submit closing documents within 30 days of the entry of the Court's order, subject to requests for reasonable extensions of time.

_____
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**